**19MAG4488**

ORIGINAL

Approved: _____
BENJAMIN WOODSIDE SCHRIER
Assistant United States Attorney

Before:   THE HONORABLE ONA T. WANG
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - x
                                    :
UNITED STATES OF AMERICA            : SEALED COMPLAINT
                                    :
        - v. -                      : Violations of
                                    : 18 U.S.C. §§ 922(a)(1)(A),
TORRIE JOHNSON,                     : 922(g)(1), & 2
    a/k/a "Torrie Terrel Johnson,"  :
    a/k/a "Black,"                  : COUNTIES OF OFFENSE:
                                    : MANHATTAN & BRONX
            Defendant.              :
- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

CANDICE HENRY, being duly sworn, deposes and says that she is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and charges as follows:

## COUNT ONE
### (Firearms Trafficking)

1. From at least on or about January 23, 2019, up to and including at least on or about May 9, 2019, in the Southern District of New York and elsewhere, TORRIE JOHNSON, a/k/a "Torrie Terrel Johnson," a/k/a "Black," the defendant, not being a licensed importer, manufacturer, and dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of importing, manufacturing, and dealing in firearms, and in the course of such business did ship, transport, and receive firearms in interstate and foreign commerce, to wit, JOHNSON illegally transported firearms from South Carolina to New York and sold them in Manhattan and the Bronx.

(Title 18, United States Code, Sections 922(a)(1)(A) and 2.)

**COUNT TWO**
**(Felon in Possession of a Firearm)**

2. On or about February 11, 2019, in the Southern District of New York and elsewhere, TORRIE JOHNSON, a/k/a "Torrie Terrel Johnson," a/k/a "Black," the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce a firearm, to wit, a Jimenez Arms model J.A. .380 caliber pistol, which had previously been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Sections 922(g)(1) and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3. I am a Special Agent with the ATF and I have been personally involved in the investigation of this matter. This affidavit is based on that experience, my conversations with other law enforcement officers and others, and my examination of reports, records, photographs, and video and audio recordings. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Based on my involvement in this investigation and my conversations with other law enforcement officers who were directly involved in the events described below, including an undercover New York City Police Department ("NYPD") detective (the "UC"), as well as my review of reports, records, photographs, and video and audio recordings, I have learned, among other things, the following:

   a. On or about January 23, 2019, TORRIE JOHNSON, a/k/a "Torrie Terrel Johnson," a/k/a "Black," the defendant, met with the UC in a car parked at or near 1146 Ogden Avenue in the Bronx, New York. JOHNSON did not know that the UC was an undercover NYPD detective. Rather, JOHNSON believed that the UC was a potential customer interested in purchasing a firearm from him.

   b. During the January 23, 2019 meeting described in the preceding paragraph, JOHNSON sold the UC one Jimenez Arms model J.A. .380 caliber pistol ("Firearm-1"), as well as 21 rounds of Tula Cartridge Works .380 caliber ammunition. The UC paid JOHNSON for Firearm-1 and the ammunition with $500 of pre-recorded buy

money. Firearm-1 and the ammunition are pictured below:



c. On or about January 23, 2019, following the meeting described in the preceding two paragraphs, the UC was shown a photograph array containing six photographs, one of which was a photograph of JOHNSON. The UC positively identified JOHNSON as the person who had sold him Firearm-1.

d. On or about February 11, 2019, JOHNSON met with the UC in the UC's car, which was parked at or near 125 Canal Street in Manhattan, New York. During the meeting, JOHNSON sold the UC six Jimenez Arms model J.A. .380 caliber pistols ("Firearm-2," "Firearm-3," "Firearm-4," "Firearm-5," "Firearm-6," and "Firearm-7"), as well as one Cobra Enterprises model CA-32 .32 caliber pistol ("Firearm-8"). Additionally, JOHNSON sold the UC approximately 50 rounds of .380 caliber ammunition and six rounds of .32 caliber ammunition. The UC paid JOHNSON for the firearms and ammunition with approximately $3,500 of pre-recorded buy money.

e. Firearm-2, Firearm-3, Firearm-4, Firearm-5, Firearm-6, Firearm-7, Firearm-8, and the ammunition are pictured below:



f. Video and audio recordings of JOHNSON's February 11, 2019 sale of Firearm-2, Firearm-3, Firearm-4, Firearm-5, Firearm-6, Firearm-7, and Firearm-8 to the UC were captured by hidden recording devices. JOHNSON's face, as well as the sale of the seven firearms, can be seen clearly in the video recordings.

g. On or about March 18, 2019, JOHNSON met with the UC in the UC's car, which was again parked at or near 125 Canal Street in Manhattan, New York. During the meeting, JOHNSON sold the UC five Jimenez Arms model J.A. 9 millimeter pistols ("Firearm-9," "Firearm-10," "Firearm-11," "Firearm-12," and "Firearm-13"), as well as one Ruger .380 caliber pistol ("Firearm-14"). Additionally, JOHNSON sold the UC approximately 100 rounds of Winchester 9 millimeter ammunition and 16 rounds of Blazer Brass 9 millimeter ammunition. The UC paid JOHNSON for the firearms and ammunition with approximately $3,600 in pre-recorded buy money.

   h. Firearm-9, Firearm-10, Firearm-11, Firearm-12, Firearm-13, Firearm-14, and the ammunition are pictured below:



   i. Video and audio recordings of JOHNSON's March 18, 2019 sale of Firearm-9, Firearm-10, Firearm-11, Firearm-12, Firearm-13, and Firearm-14 to the UC were captured by hidden recording devices. JOHNSON's face, as well as the sale of the six firearms, can be seen clearly in the video recordings.

   j. On or about April 23, 2019, JOHNSON met with the UC in the UC's car, which was again parked at or near 125 Canal Street in Manhattan, New York. During the meeting, JOHNSON sold the UC two Taurus model G2S 9 millimeter pistols ("Firearm-15" and "Firearm-16"), one Smith & Wesson model SD40VE .40 caliber pistol ("Firearm-17"), one Ruger model LCP .380 caliber pistol ("Firearm-18"), and one Rohm model RG38 .38 caliber revolver ("Firearm-19"). Additionally, JOHNSON sold the UC approximately one round of Sig Sauer 9 millimeter ammunition, 13 rounds of assorted .38 caliber ammunition, 12 rounds of Winchester .40 caliber ammunition, 17 rounds of assorted 9 millimeter ammunition, and 6 rounds of assorted .380 caliber ammunition. The UC paid JOHNSON for the

firearms and ammunition with approximately $2,700 in pre-recorded buy money.

      k.   During the April 23, 2019 meeting described in the preceding paragraph, and again during a May 6, 2019 phone conversation, the UC told JOHNSON, in sum and substance, that the UC was planning to resell in a foreign country the firearms that JOHNSON was selling him. On both occasions, in sum and substance, JOHNSON confirmed that he understood.

      l.   Firearm-15, Firearm-16, Firearm-17, Firearm-18, Firearm-19, and the ammunition are pictured below:



      m.   Video and audio recordings of JOHNSON's April 23, 2019 sale of Firearm-15, Firearm-16, Firearm-17, Firearm-18, and Firearm-19 to the UC were captured by hidden recording devices. JOHNSON's face, as well as the sale of the five firearms, can be seen clearly in the video recordings.

      n.   On or about May 6, 2019, JOHNSON and the UC spoke on the phone. During that call, JOHNSON told the UC, in sum and

substance, that he was attempting to obtain for sale to the UC a Century Arms Mini Draco AK-47 semi-automatic pistol. JOHNSON was ultimately unable to obtain the pistol. A photograph of the pistol from the website of Century Arms, its manufacturer, appears below:



o. On or about May 9, 2019, JOHNSON met with the UC in the UC's car, which was again parked at or near 125 Canal Street in Manhattan, New York. During the meeting, JOHNSON sold the UC one Clerke .32 caliber revolver ("Firearm-20"), one Ruger .380 caliber pistol ("Firearm-21"), one Springfield .45 caliber pistol ("Firearm-22"), one Taurus 9 millimeter pistol ("Firearm-23"), one Beretta .380 caliber pistol ("Firearm-24"), and one Cobra .380 caliber pistol ("Firearm-25"), as well as approximately 25 rounds of .45 caliber ammunition, seven rounds of 9 millimeter ammunition, and 20 rounds of .380 caliber ammunition. The UC paid JOHNSON for the firearms and ammunition with approximately $3,250 in pre-recorded buy money.

5. Based on my review of GPS location information associated with a cellphone assigned the call number that TORRIE JOHNSON, a/k/a "Torrie Terrel Johnson," a/k/a "Black," the defendant, used to communicate with the UC, which was obtained pursuant to a search warrant, as well as my conversations with other law enforcement officers and others, and my review of reports, records, photographs, and video and audio recordings, I have learned that JOHNSON purchased the Firearms in South Carolina and transported them to New York for the purpose of selling them there.

6. Based on my review of searches of an ATF database, and my conversations with other law enforcement officers, I have learned that, from at least on or about January 23, 2019, up to and including at least on or about May 9, 2019, TORRIE JOHNSON, a/k/a "Torrie Terrel Johnson," a/k/a "Black," the defendant, was not a licensed firearms dealer, importer, or manufacturer.

7. Based on my review of records from law enforcement databases, as well as my conversations with other law enforcement officers and others, I have learned that Firearm-1, Firearm-2, Firearm-3, Firearm-4, Firearm-5, Firearm-6, Firearm-7, Firearm-8, Firearm-9, Firearm-10, Firearm-11, Firearm-12, Firearm-13, Firearm-14, Firearm-15, Firearm-16, Firearm-17, Firearm-18, and Firearm-19 were manufactured outside of New York State.

8. I have reviewed criminal history records pertaining to TORRIE JOHNSON, a/k/a "Torrie Terrel Johnson," a/k/a "Black," the defendant, which show that JOHNSON was convicted on or about June 8, 2011, in South Carolina state court, of possession, manufacture, and trafficking of methamphetamine and cocaine base and other controlled substances, in violation of South Carolina Code of Laws § 44-53-375(B)(2), which is a felony punishable by a term of imprisonment of more than one year.

WHEREFORE, deponent respectfully requests that TORRIE JOHNSON, a/k/a "Torrie Terrel Johnson," a/k/a "Black," the defendant, be imprisoned or bailed, as the case may be.

_____
SPECIAL AGENT CANDICE HENRY
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives


Sworn to before me this
9th day of May 2019

_____
THE HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK